IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| AKSARBEN TRANSPORTATION, LLC, a Nebraska limited liability company d/b/a BLACKROCK TRANSPORTATION;<br><br>Plaintiff,<br><br>vs.<br><br>WHITELINE LOGISTICS, INC., a Mississippi corporation;<br><br>Defendant. | **8:26CV649**<br><br>**MEMORANDUM AND ORDER** |

This matter comes before the Court on Plaintiff's, Aksarben Transportation, LLC, doing business as Blackrock Transportation's ("Blackrock's"), motion for temporary restraining order. Filing No. 4. For the reasons set forth herein, the Court denies the motion for temporary restraining order and sets the matter for a preliminary injunction hearing.

## I. BACKGROUND

According to its verified complaint, Aksarben Transportation, LLC d/b/a Blackrock Transportation is a Nebraska limited liability company with its principal place of business in Nebraska, and its sole member is a citizen of Nebraska. Filing No. 1 at 1. Whiteline Logistics, Inc., is a Mississippi corporation. *Id.* Both companies are engaged in the business of freight brokering and transportation services. *Id.* at 2.

From 2022 to 2025, Whiteline's sole customer was Plumrose/JBS Swift. *Id.* On or about December 18, 2022, Whiteline engaged Blackrock to assist with brokering freight on behalf of JBS. *Id.* However, in October of 2025, JBS informed Blackrock it could no longer utilize Blackrock to broker JBS loads unless Blackrock was operating as an

extension of Whiteline. *Id.* at 3. Accordingly, on October 29, 2025, the parties entered into a Non-Compete and Non-Solicitation Agreement whereby Blackrock would act as a subcontractor of Whiteline. Filing No. 1-1.

The agreement provided that Mississippi law governed it. *Id.* at 2. It first addressed the use of confidential information:

> Each party acknowledges that all customer lists, carrier databases, pricing structures, business methods, and related proprietary information and trade secrets belonging to the other party ("Confidential Information") shall remain the sole property of that party, and shall not be disclosed or used for any purpose except in the performance of this subcontracting relationship.

*Id.*

The agreement also contained a mutual non-compete provision and non-solicitation provision as follows:

> During the term of this Agreement and for twenty-four (24) months following the termination of this subcontracting relationship (for an reason), neither party shall, directly or indirectly, engage in freight brokering or competing logistics services using the other party's customers or carriers with whom they had contact through the subcontracting relationship, or otherwise utilize the other party's Confidential Information without prior written consent.
>
> . . . .
>
> During the same period, neither party shall:
> - Solicit or attempt to solicit the other party's customers, shippers, or carriers with whom they had contact during the term of this Agreement;
> - Divert or attempt to divert any such customer's business away from the other party;
> - Induce or attempt to induce any employee, subcontractor, or agent of the other party to terminate their relationship with that party.

*Id.* at 1–2.

Blackrock alleges Whiteline breached this agreement beginning in late 2025 when it began using Blackrock's carriers on its own, thereby bypassing Blackrock. Filing No. 1

at 5. However, Whiteline reassured Blackrock that this was a one-time incident due to an emergency situation, and the parties continued in their arrangement. *Id.*

However, on June 17, 2026, Whiteline attempted to hire a Blackrock employee in violation of the non-compete and non-solicitation agreement. *Id.* In August of 2026, a third-party trucking company informed Blackrock that Whiteline had informed it Blackrock was no longer working with Whiteline. *Id.* Whiteline had also asked this third-party trucking company to continue running the same loads but for Whiteline directly, once again bypassing Blackrock. *Id.*

On August 24, 2026, Blackrock reached out to Whiteline about this conduct but received no response. *Id.* Whiteline continues to use Blackrock's carriers in violation of the parties' agreement. *Id.* Blackrock estimates Whiteline has utilized 134 of its carriers without authorization to date, resulting in over $75,000 in damages. *Id.* at 6. It estimates it will incur an additional $300,000 in damages if Whiteline's actions continue.

Blackrock has asserted causes of action for breach of contract, tortious interference with a business relationship, and misappropriation of trade secrets. It now moves for injunctive relief.

## II. ANALYSIS

Blackrock seeks an immediate temporary restraining order without notice to Whiteline 1) enjoining Whiteline and all persons and entities acting in concert with it from using or disclosing Blackrock's confidential information; 2); enjoining Whiteline and all persons and entities working in concert with it from operating a competing business; 3) enjoining Whiteline and all persons and entities working in concert with it from soliciting or attempting to solicit Blackrock's customers, shippers, or carriers and diverting or

attempting to divert business away from Blackrock; 4) enjoining Whiteline and all persons and entities working in concert with it from inducing or attempting to induce any employee, subcontractor, or agent of Blackrock to terminate their relationship with Blackrock; 5) requiring Whiteline and all persons and entities working in concert with it to comply with the obligations imposed upon them as stated in the parties' non-compete and non-solicitation agreement.

Federal Rule of Civil Procedure 65(b) allows the Court to issue a temporary restraining order without notice to avoid "immediate and irreparable injury, loss, or damage" to the moving party. In deciding whether to issue a temporary restraining order, the Court considers: (1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest. *See Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987) (enumerating the four factors). "The party seeking such relief must satisfy a cumulative burden of proving each of the four elements enumerated before a temporary restraining order or preliminary injunction can be granted." *Id.*

Additionally, when issuing a temporary restraining order without notice, the plaintiff's attorney is required to set forth facts in affidavit showing efforts to provide notice and why immediate relief is necessary. Fed. R. Civ. P. 65(b). Here, Plaintiff's attorney avers that he has mailed and emailed copies of the complaint and a copy of the temporary restraining order to a "Jody McLaughlin" with Whiteline. Filing No. 6 at 12. Accordingly, this prerequisite to a temporary restraining order has been met.

**A. Likelihood of Success on the Merits**

The Court starts with the "most important" factor—Plaintiff's likelihood of success on the merits. *Mock v. Garland*, 75 F.4th 563, 587 n.60 (5th Cir. 2023) (citing *Def. Distributed v. United States Dep't of State*, 838 F.3d 451, 463 (5th Cir. 2016) (Jones, J., dissenting)).

Blackrock first alleges Whiteline breached the non-compete and non-solicitation agreement. Under Mississippi law, "[a] breach-of-contract case has two elements: (1) 'the existence of a valid and binding contract,' and (2) a showing 'that the defendant has broken, or breached it.'" *Maness v. K & A Enters. of Miss.*, LLC, 250 So. 3d 402, 414 (Miss. 2018) (quoting *Bus. Commc'ns, Inc. v. Banks*, 90 So.3d 1221, 1224 (Miss. 2012)).

"Non-competition agreements have been viewed by [the Mississippi Supreme] Court as 'restrictive contracts [which] are in restraint of trade and individual freedom and are not favorites of the law.'" *Kennedy v. Metro. Life Ins. Co.*, 759 So. 2d 362, 364 (Miss. 2000) (quoting *Frierson v. Sheppard Building Supply, Co.*, 154 So.2d 151, 156 (Miss. 1963)). "Only when such agreements are reasonable will they be considered valid and upheld . . . ." *Id.* "The validity and the enforceability of a non-competition agreement are largely predicated upon the reasonableness and specificity of its terms, primarily, the duration of the restriction and its geographic scope." *Id.* (citing *Empiregas, Inc. v. Bain*, 599 So.2d 971, 975 (Miss. 1992)).

The Court finds a likelihood that the restrictive covenants at issue here would be enforceable under Mississippi law. They were time-limited (for a twenty-four month period) and limited to only those customers with whom the parties actually did business. The Court therefore finds the provisions are specific, narrow, and reasonable enough to be enforceable against Whiteline.

The Court also finds a likelihood that Blackrock would succeed in demonstrating Whiteline breached the agreement. According to Blackrock's verified complaint, Whiteline began bypassing it to create contracts with former customers and even reached out to a current Blackrock employee to recruit him for employment. Accordingly, Blackrock has demonstrated a likelihood of success on its breach of contract claim.

For similar reasons, the Court also finds a likelihood of success on Blackrock's claim for tortious interference with business relationships. "Under Mississippi law, a claim for tortious interference with business relations requires proof of the following four elements: (1) the acts were intentional and willful; (2) the acts were calculated to cause damage to the plaintiffs in their lawful business; (3) the acts were done with the unlawful purpose of causing damage and loss without right or justifiable cause on the part of the defendant (which constitutes malice); and (4) actual loss and damage resulted." *PDN, Inc. v. Loring*, 843 So. 2d 685, 688 (Miss. 2003) (citing M*BF Corp. v. Century Bus. Commc'ns, Inc.*, 663 So.2d 595, 598 (Miss. 1995)). Blackrock's assertion that Whiteline contacted a customer, informed it Blackrock was no longer doing business with Whiteline, and then took the client for itself is sufficient to meet these four elements.

However, the Court does not find Blackrock has shown a likelihood of success on its claim for misappropriation of trade secrets. First, it does not address this claim at all in its motion for injunctive relief of supportive brief. While the parties' agreement addresses the non-disclosure of "confidential information," Blackrock does not explain how this definition may be applicable (or not) in the trade-secrets context. Absent factual and legal support, the Court will not presume that merely labeling information "confidential" renders it a protectable trade secret.

Second, Blackrock states that either Mississippi or Nebraska law may apply, but because it does not address the claim in its brief, makes no argument showing how either law may support its claim. It is not the Court's role to do the legal legwork to make Plaintiff's case for it.

And third, to the extent Blackrock implies its trade-secrets claim may be based upon Whiteline's cultivation of carrier relationships outside the agreement, it does not appear that such contacts were in any way secret; rather, it seems these carriers were known to both Whiteline and Blackrock. The alleged wrongdoing, per the complaint, lies in Whiteline bypassing Blackrock in their arrangement to contract with clients they both had a relationship with; nothing supports that Whiteline used information obtained from Blackrock reach customers it would not have otherwise known. Accordingly, the Court finds Blackrock has not shown a likelihood of success on this claim at this juncture.

**B. Irreparable Harm**

To show immediate and irreparable harm, a party must show "that [it] is likely to suffer irreparable harm in the absence of preliminary relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "In general, a harm is irreparable where there is no adequate remedy at law, such as monetary damages." *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011) (citation omitted). "A showing of '[s]peculative injury is not sufficient; there must be more than an unfounded fear on the part of the applicant.'" *Id.* (quoting *Productos Carnic, S.A. v. Cent. Amer. Beef & Seafood Trading Co.*, 621 F.2d 683, 686–87 (5th Cir. 1980)).

Here, Blackrock fails to demonstrate irreparable harm. The only evidence before the Court is evidence of strictly monetary harm: in the verified complaint, Blackrock states

it has suffered $75,000 in damages and is likely to suffer an additional $300,000 if Whiteline's actions continue. Filing No. 1 at 6. These damages are easily compensable by an award of money damages after the case is resolved on the merits should Blackrock prevail.

In its brief, Blackrock speculates about potential non-economic damages:

> Here, carriers who previously brokered freight through Blackrock on behalf of Whiteline, are *likely* to be confused as to whether they are operating with Blackrock, Whiteline, or Blackrock on behalf of Whiteline. This confusion is *all the more likely* when Whiteline is contacting Blackrock's carriers directly, and *likely* offering them conflicting information than that provided by Blackrock. This *potential* reputational harm would cause immediate and irreparable harm to Blackrock.

Filing No. 6 at 7 (emphasis added). First, this is not admissible evidence as it does not come from the verified complaint or an affidavit from Blackrock. Rather, it is merely counsel's opinion and assessment in the brief. Second, as evidenced by the italicized language, any such harm is speculative. Blackrock does not offer any concrete evidence of reputational harm or confusion by its customers, such as an affidavit from a company that was improperly contacted by Whiteline. The Court's calculus on this factor is subject to change if Blackrock can produce admissible evidence of reputational harm at the preliminary injunction hearing, but for the time being, the evidence supports only economic harm which does not warrant a temporary restraining order.

**C. Balance of the Harms**

The third factor the Court considers is the balance of harms. This factor is neutral. Both parties stand to suffer economic harm in the face of an adverse ruling. However, as explained above, this harm is easily compensable with money damages and thus does not support the necessity of a injunctive relief at this time.

**D. The Public Interest**

The fourth factor the Court must consider is the public interest. The public interest weighs slightly in Blackrock's favor. Specifically, the public interest favor enforcement of voluntary contract obligations. *See Union Nat. Life Ins. Co. v. Tillman*, 143 F. Supp. 2d 638, 646 (N.D. Miss. 2000) ("The public has an interest in not allowing parties to unilaterally breach binding contracts . . . ."). However, this factor is not enough to outweigh those factors warranting strongly against issuance of the temporary restraining order as set forth above.

**III. CONCLUSION**

For the reasons set forth herein, the Court finds Blackrock's motion for temporary restraining order should be denied and will set the matter set for a preliminary injunction hearing.

IT IS ORDERED:

1. Plaintiff's motion, Filing No. 4, is denied as to the request for temporary restraining order but remains pending as to the request for preliminary injunction.
2. A hearing is scheduled on the Motion for Preliminary Injunction, Filing No. 4, for **October 29, 2026, at 1:30 p.m.** in Courtroom No. 3, Roman L. Hruska U.S. Courthouse, 111 South 18th Plaza, Omaha, NE before Senior Judge Joseph F. Bataillon. Plaintiff is ordered to immediately provide notice of the hearing and copy of this Order to Defendant.
3. The parties should file any evidence and written argument they wish the Court to consider at the hearing on or before October 28, 2026.

Dated this 26th day of October, 2026.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge